WILLIAM S. EVANS, Plaintiff, *v.* STAR COMPANY, Defendant.

Supreme Court, New York County, April 8, 1925.

Libel — damages — action for libel predicated upon publication in defendant's newspaper of charge that plaintiff had accepted bribe to affect his conduct as Member of Assembly — verdict of jury awarding plaintiff $100,000 as compensatory damages and $25,000 as punitive damages attacked as excessive — verdict of jury not influenced by passion or prejudice — no evidence of reasonable belief in charges — question of damages within province of jury — verdict sustained.

Defendant's motion to set aside the verdict of a jury, in an action for libel predicated upon the publication of a charge that the plaintiff accepted a bribe to affect his conduct as a Member of Assembly, on the ground that said verdict is excessive, should be denied where the verdict, which awarded the plaintiff $100,000 as compensatory damages and $25,000 as punitive damages, cannot be ascribed in any degree to passion, or prejudice, or partiality, and there was no evidence tending to show investigation and reasonable belief in the charges, since the question of damages was in the province of the jury and its findings should not be disturbed, particularly where the publication in a newspaper having a circulation of over 1,000,000 lowered the political standing of the plaintiff, greatly impaired his general repute, and in charging a felony involving faithlessness it reflected most unfavorably upon his character as a lawyer.

MOTION to set aside the verdict in an action for libel charging plaintiff with accepting bribe to affect his conduct as an Assemblyman.

*Don R. Almy* [*Martin Conboy* of counsel], for the plaintiff.

*William A. De Ford,* for the defendant.

PROSKAUER, J.:

As damages for a libel charging plaintiff with acceptance of a bribe to affect his conduct as an Assemblyman, the jury has awarded plaintiff $100,000 as compensatory damages and $25,000 as punitive damages.   The verdict is attacked as excessive.

This concededly false charge was published on the front page of a Sunday newspaper having a circulation of over 1,000,000. It related to a bill concerning street railroad fares, which was the subject of widespread popular interest.   The jury had a right to find that it gravely lowered the political standing of Mr. Evans; that it caused him profound mental anguish; and that his general repute was greatly impaired.   Moreover, as it charged a felony

involving faithlessness and disloyalty, the jury could say it reflected most unfavorably upon his character as a lawyer.

Nothing in the conduct of the trial suggests that I can ascribe the verdict in any degree to passion or prejudice. As the jury fairly and dispassionately fixed the compensation for this serious injury to plaintiff in these different phases of his life and career, I would be usurping its function if I set aside this finding.

With respect to the punitive damages, there was more favorable instruction to the jury than defendant was entitled to. It was told that plaintiff relied not on actual ill will, but on the claim of wanton and reckless disregard of plaintiff's rights, though actual ill will was inferable from the falsity and circumstances of publication.

The charge against plaintiff was that he had remained away from a meeting of the judiciary committee of the Assembly which was to consider the so-called Jenks bill and thus failed to cast a deciding vote against it. The evidence showed that this committee had lost jurisdiction over the Jenks bill, which was then before the rules committee. Plaintiff also claimed that he had had no notice of the meeting. Both these explanations were given to the reporter prior to the publication. The article in its headline characterized these explanations as " flimsy." The statement that the committee had lost jurisdiction was true and substantial, not flimsy. Much evidence was given of defendant's public spirit in conducting a crusade against the Jenks bill; but there was no evidence of fact or hearsay upon which to predicate any reasonable belief that plaintiff had been bribed.

The right of a newspaper to criticize public men carries with it a correlative duty. To subject a public official to a baseless charge of corruption is to inflict a wrong not only on him, but upon the public, and the penalty to be imposed for this wrong is peculiarly a matter for the jury as the representative of the public.

Upon the argument of this motion defendant's counsel, while recognizing the force of these considerations, urged that I should feel bound by the action of the appellate courts in reducing verdicts in other libel cases. I do not believe that the appellate courts have attempted to set a fixed scale for the value of reputations. But even the case most relied on by defendant furnishes support for the verdict. In *Crane* v. *Bennett* (77 App. Div. 102) a verdict was reduced to $25,000 in a case where a city magistrate was charged with being a hectoring, bullying, insulting magistrate. That verdict was recovered in 1901. The variance between the purchasing power of money to-day and twenty-four years ago would undoubtedly more than double that allowance for a libel not

comparable in seriousness or in wideness of distribution with the libel here. In the *Crane* case there was no charge of corruption. The plaintiff there was held up merely to ridicule and contempt, not described as a bribe taker. The circulation of the paper in which the Crane libel was printed was 500,000; the circulation here was over 1,000,000. There was there substantial evidence tending to show investigation and reasonable belief in the truth of the charges. Here there was none. And finally, the court's action there was predicated upon the statement that "the jury must have been influenced by passion or prejudice." These are not existent here.

As Chief Justice KENT wrote in *Tillotson* v. *Cheetham* (2 Johns. 63, 74): "We have no standard by which we can measure the just amount, and ascertain the excess. It is a matter resting in the sound discretion of a jury. The plaintiff, when libeled, was a high and confidential officer of government; and by the libel, he is held out to the world as an object of reproach. He is represented, as being seduced into unworthy and dishonorable conduct, by motives equally mean and unworthy."

And again in *Coleman* v. *Southwick* (9 Johns. 45, 51) Chief Justice KENT writes: "The question of damages was within the proper and peculiar province of the jury. It rested in their sound discretion, under all the circumstances of the case, and unless the damages are so outrageous as to strike everyone with the enormity and injustice of them, and so as to induce the court to believe that the jury must have acted from prejudice, partiality or corruption, we cannot, consistently with the precedents, interfere with the verdict. It is not enough to say, that in the opinion of the court, the damages are too high, and that we would have given much less. It is the judgment of the jury, and not the judgment of the court, which is to assess the damages in actions for personal torts and injuries."

Later authorities support no rule inconsistent with this sound doctrine. Every valid reduction of a jury award must rest upon the principle thus enunciated by Chief Justice KENT. As I am clear that the jury was not actuated by "prejudice, partiality or corruption," I cannot interfere with this verdict.

It is urged that this is the largest libel verdict ever recorded in this State. This fact should not affect judicial action. The verdict is large; but the wrong for which it compensates and punishes was found by the jury to be wanton and most damaging.

Motion to set aside the verdict denied.