SAMUEL ROTHHOLZ, PLAINTIFF IN ERROR, v. OLIVER R. DUNKLE, DEFENDANT IN ERROR.

A communication, made by the cashier of a bank to a stockholder, with reference to the solvency of the plaintiff, who was surety upon an official bond to the bank, is privileged, and it is not necessary to justify the communication that it be in response to an inquiry made by the stockholder.

---

On error to the Supreme Court.

For the plaintiff in error, *August Stephany.*

For the defendant in error, *Howard Carrow.*

The opinion of the court was delivered by

VAN SYCKEL, J. This is an action for damages for an alleged libel contained in the following letter, written by Oliver R. Dunkle, the cashier of the Merchants' Bank, of Atlantic City:

"*Robert Ohnmeiss, Esq.:*

"Enclosed please find one share of Merchants' stock, received some time ago. Our board refuses to purchase at present, but hold under advisement. We have stricken your name from the bond of Mr. Carl Voelker, by request; also, Samuel Rothholz's, as the latter has no financial standing.

"Respectfully,

"O. R. DUNKLE, *Cashier.*"

Robert Ohnmeiss was a stockholder in the same bank, and he and Rothholz, the plaintiff, were sureties on the official bond of Carl Voelker, an employe of the bank.

Previous to the writing of this letter, Ohnmeiss had requested Dunkle to have his name stricken from the said bond, but did not make any inquiry with respect to the plaintiff Rothholz.

At the close of the plaintiff's case, the trial judge, regarding the communication a privileged one, ordered the plaintiff to be called.

Whether, under the given circumstances, the non-suit should have been ordered, is the sole question in this court.

The statement that the plaintiff had no financial standing was libellous, and constituted a legal foundation for the recovery of damages, unless the occasion upon which it was uttered gave rise to the privilege of publishing what would otherwise be actionable.

The term " privileged," as applied to a communication alleged to be libellous, means simply that the circumstances under which it was made are such as to repel the legal inference of malice, and to throw upon the plaintiff the burden of offering some evidence of its existence beyond the falsity of the charge.

This court, in *King* v. *Patterson,* 20 *Vroom* 419, declared " that a communication, made *bona fide,* upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged, if made to a person having a corresponding interest or duty, although it contain criminatory matter which, without this privilege, would be actionable."

In the case cited, the learned judge who delivered the opinion of the court referred, with approbation, to *Lawless* v. *Anglo-Egyptian Oil Company, L. R.,* 4 *Q. B. Div.* 262, and to *P., W. & B. R. R. Co.* v. *Quigley,* 21 *How.* 202.

The first of these cases was an action for libel against a corporation for publishing a report made to the company by auditors in their audit of the manager's accounts, reflecting upon the plaintiff. The report was submitted at a general meeting of the shareholders of the company, and under a resolution of the meeting was printed and circulated among the shareholders. The court held that, inasmuch as it was the interest of all the shareholders to be informed of the report, the publication was privileged, on the ground, as Mellor, J., said, " that to print the report was a necessary and reasonable mode of communicating it to all the shareholders, who must be more or less numerous."

In the second case, a report, made to stockholders in writing, and printed, with respect to the capacity and skill of one of the company's employes, was held to be a privileged communication. These cases are referred to for the purpose of showing that a communication to a shareholder of a corporation, touching matters which concern the corporate body, are within the rule of privilege, which secures immunity to the official who makes the publication.

Ohnmeiss, being not only a co-surety with Rothholz upon the official bond of Voelker, but also a shareholder in the bank, he had the right to receive the information imparted to him by Dunkle, the cashier. The fact that Rothholz's name had been taken from a bond held by the bank, and the reason for removing it, was a matter which concerned Ohnmeiss. As a stockholder, he could justly have complained if a competent security had been improperly surrendered by those who conducted the affairs of the bank.

It was not necessary, to justify the communication, that it should have been in response to an inquiry made by Ohnmeiss.

In *Waller* v. *Lock*, 45 *L. T.* (*N. S.*) 243, Jessel, Master of the Rolls, says: " If an answer is given in the discharge of a social or moral duty, or if the person who gives it thinks it to be so, that is enough; it need not even be an answer to an inquiry, but the communication may be a voluntary one."

In my judgment, the circumstances under which the letter was written, upon which this suit is based, repel the inference of an improper motive on the part of defendant, and cast upon the plaintiff the burden of proving malice. No evidence having been produced in the trial court to show malice in the publication, the non-suit was properly ordered, and the judgment below should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, DIXON, GARRISON, KNAPP, MAGIE, SCUDDER, VAN SYCKEL, BROWN, CLEMENT, SMITH, WHITAKER. 13.

*For reversal*—None.