NED K. FINKELSTEIN, RESPONDENT, v. HERMAN GEISMAR, APPELLANT.

Submitted July 5, 1917—Decided November 13, 1917.

1. A communication is qualifiedly privileged where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person, to whom he makes such communication in the performance of such duty, or where the person is so situated that it becomes right in the interests of society that he should tell third persons certain facts, which he in good faith proceeds to do.
2. A qualifiedly privileged communication is inconsistent with the existence of express malice and requires both an occasion of privilege and the use of that occasion in good faith, and is actionable if actuated by express malice.
3. Where there is evidence of express malice to rebut the occasion of qualified privilege, the judge must submit the case to the jury.
4. By express malice in connection with slander is meant some motive actuating the defendant different from that which *prima facie* rendered the communication privileged, and being a motive contrary to good morals. The existence of such a motive may be legitimately gathered from the character of the defamatory communication—as if the terms used be utterly beyond and disproportionate to the facts which the defendant had reason to believe; or from the circumstances under which the communication was made; or from any extraneous facts which in reason tend to prove it.
5. Where, in a suit for slander, it is open to the jury to legitimately find that the defendant's motive in making the defamatory statement was to drive the plaintiff out of the neighborhood where

both were engaged in business, because he thought that the plaintiff, in order to get trade, would sell at cut rate prices articles in which they both dealt, a motion to direct a verdict in favor of the defendant, upon the ground that the communication was one having a qualified privilege, is properly denied.

6. The refusal of a trial judge to allow a leading question to be put by counsel to a witness called by him is a discretionary matter and will not lead to a reversal on appeal in the absence of a palpable abuse of discretion resulting in prejudice to the complaining party.

7. An objection that a question was overruled will not be considered where substantially the same question was afterwards put to the same witness and was answered.

On appeal from the First District Court of the city of Jersey City.

Before Justices GARRISON, TRENCHARD and MINTURN.

For the appellant, *Weller & Lichtenstein.*

For the respondent, *McDermott & Enright.*

The opinion of the court was delivered by

TRENCHARD, J. On May 15th, 1916, the plaintiff below opened a clothing store on Washington street, in Hoboken. Three days later he was invited to the mayor's office in the city hall. In this suit for slander he avers that then and there the defendant said to the mayor of and concerning him:

"This man, Mr. Finkelstein, is a faker and came to Hoboken to fake the public, and his method of doing business is to show an article in the window and when a man comes inside to purchase that article to give him inferior goods in its place. He is a disgrace to Hoboken and Washington street, and a man like him should be driven out of the town."

The jury found for the plaintiff, and the defendant's chief contention here is that the trial judge should have directed a verdict for him on the ground that the alleged slander was a privileged communication.

We think the judge rightly refused to direct a verdict.

The question is whether the defendant's statement came within that class of communications which is regarded in law as having a qualified privilege.

A communication is qualifiedly privileged where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person to whom he makes such communication in the performance of such duty, or where the person is so situated that it becomes right in the interests of society that he should tell third persons certain facts, which he in good faith proceeds to do. *King* v. *Patterson,* 49 *N. J. L.* 417; *Fahr* v. *Hayes,* 50 *Id.* 275; *Rothholz* v. *Dunkle,* 53 *Id.* 438.

It is seen, therefore, that a qualifiedly privileged communication is inconsistent with the existence of express malice and requires both an occasion of privilege and the use of that occasion in good faith and is actionable if actuated by express malice.

Where there is evidence of express malice to rebut the occasion of privilege the judge must submit the case to the jury.

By express malice in this connection is meant some motive actuating the defendant different from that which *prima facie* rendered the communication privileged, and being a motive contrary to good morals. The existence of such a motive may be legitimately gathered from the character of the defamatory communication—as if the terms used be utterly beyond and disproportionate to the facts which the defendant had reason to believe; or from the circumstances under which the communication is made; or from any extraneous facts which in reason tend to prove it. *Fahr* v. *Hayes, supra.*

In the present case it may be assumed that the occasion upon which the words were spoken was one giving rise to a qualified privilege. But we think that the evidence was such that the jury could legitimately find express malice and a want of good faith, as in fact it did find.

The evidence showed that at the time of the defendant's statement, the plaintiff and the defendant were competitors in business, the plaintiff having opened his store three days before, and the defendant being an old-established merchant. The defendant was a member of a committee appointed by the Merchants Association to investigate the plaintiff's method of doing business. According to his own testimony he made no investigation except to observe that "the plaintiff had his goods on ordinary packing boxes," but, nevertheless, he went immediately to the mayor and caused the plaintiff to be sent for and then and there made the statement complained of. His own testimony shows that his sole reason for making the defamatory statement was that a corporation (with which the plaintiff was formerly connected), whilst in business for a short period during the year before at another location, had sold goods at cost, and lower than elsewhere, and in his "estimation" not as represented.

Apart from the testimony referred to the defendant testified as follows:

"*Q.* Do I understand that you went to the mayor and said that Finkelstein was doing a disgraceful business, or a fake business, or something to that effect, when all that you had to complain about was that his goods were still in boxes or on the tops of boxes?

"*A.* I hadn't reference at all to his being in business then, because he had only come there two or three days before; I had reference to his previous performance.

"*Q.* Well, weren't you complaining to the mayor because this man, Finkelstein, was at the time violating the ordinance?

"*A.* No, sir; we were complaining to the mayor about that.

"*Q.* You didn't go to the mayor, in May, 1916, to complain about what Finkelstein had done some months or years before, did you?

"*A.* Yes, sir; there was the appearance of a repetition, from the way he conducted business previous to that, and *we didn't want a second performance of it.*

"*Q.* And the only thing you know of your own knowledge was that he had sweaters advertised for 69 cents?

"*A. No, I had reference to the condition of the store; there wasn't anything like it on the entire street.*

"*Q.* Didn't you say in the office of the mayor that Finkelstein ought to be driven out of town?

"*A.* No, sir; that is not what I said.

"*Q.* Didn't you say something to that effect?

"*A.* Something to that effect, yes.

"*Q.* What did you say?

"*A.* I said that a *store of that kind ought not to be allowed on the street.*"

We conclude, therefore, that it was open to the jury to legitimately find that the defendant's motive in making the statement was to drive the plaintiff off of the *street* where they both were doing business, because he thought that the plaintiff, in order to get trade, would sell at cut-rate prices articles in which they both dealt. Accordingly, the motion for a direction of a verdict in favor of the defendant was properly denied.

The defendant also complains that the trial judge refused to allow the following question to be put by him to his own witness: "And it was on account of that that you didn't want him to repeat it, isn't that so?" But that was a leading question, and the refusal of a trial judge to allow a leading question to be put by counsel to a witness called by him is a discretionary matter and will not lead to a reversal on appeal in the absence of a palpable abuse of discretion resulting in prejudice to the complaining party. *Luckenbach* v. *Sciple,* 72 *N. J. L.* 476; *Mershon* v. *Hobensack,* 22 *Id.* 372. In this case there was no such abuse.

Lastly, the defendant complains that the trial judge refused to allow the defendant to ask a witness: "What was the method by which they did business?" But this complaint will not be considered, for the reason that substantially the same question was afterwards put to the same witness and was answered. *Dayton* v. *Boettner,* 82 *N. J. L.* 421.

The judgment below will be affirmed, with costs.