FIFTH JUDICIAL DISTRICT COURT OF BERGEN COUNTY.

THOMAS LICCIARDI, CHARLES BENIGNO AND EMERY WENZEL, PLAINTIFFS, v. ALBERT A. MOLNAR AND GARFIELD TAXPAYERS' CITIZENS ASSOCIATION, A CORPORATION, DEFENDANTS.

Decided November 2, 1945.

For the plaintiffs, *Charles Bernstein.*

For the defendants, *Dominick F. Pachella.*

GALANTI, D. C. J.   The plaintiffs, Thomas Licciardi, Charles Benigno and Emery Wenzel, members of the Board of Tax Assessors of the City of Garfield, bring this action of libel against the Garfield Taxpayers' Citizens Association and Albert A. Molnar, its president.   The alleged libel complained of is contained in a letter addressed by the said defendants

to the mayor and city council of the City of Garfield. The communication in question is as follows:

"We have followed very close the actions of your governing body with request for a request for an investigation by the Prosecutor and the Grand Jury into official acts.

"We wish to suggest that you specifically ask the Prosecutor and Grand Jury to look into reports that the firm of Samuel Hird and Sons, of this City, was requested to make a payment of $10,000 if their assessments were to be kept at the level in which they were at that time, and when the management refused to pay the payment, they were increased $300,000, whereupon the Hird Company has manifested determination to move from Garfield.

"We have had correspondence with the prosecutor, on the above mentioned item and many other matters. We wish to criticize the honorable Mayor for vetoing the request for an investigation, for it is our opinion that every official encouragement cooperation should be given to the authorities."

This letter was marked in evidence and is referred to as *Exhibit P-3*.

The plaintiffs aver that the defendants meant by the said letter to charge that the plaintiffs were guilty of serious and reprehensible crimes, such as willful malfeasance and misfeasance in the performance of their duties as tax assessors, conspiracy to defraud, bribery or attempted bribery, failure to properly value and assess the property of the firm of Samuel Hird and Sons, and that they had unlawfully or corruptly requested $10,000 as a consideration to refrain from increasing the assessments on said firm's property. The defense is that the defendants did not, in their letter to the mayor and city council, charge the plaintiffs with the commission of any of the crimes referred to in the state of demand but that in good faith and in the performance of what they conceived to be their duties as taxpayers and in the fulfillment of the purposes for which the defendant association was formed, they merely asked the mayor and city council to have the proper officials conduct an inquiry into the situation. The defendants claim that the alleged libel was qualifiedly privileged.

Libel is the defamation of a person by the publication of any writing tending to expose him to public hatred, contempt or ridicule. Not every defamatory publication, however, is legally actionable.

It is well settled that defamatory words uttered in a privileged communication are not actionable unless there be proof of actual malice. If such words are uttered *bona fide* on a privileged occasion in an honest belief that they are true, the party injured is remediless. In such a case it is immaterial that the words are false. I find it unnecessary, therefore, to consider the truth or falsity of the reports referred to in *Exhibit P-3*.

The fundamental question in this case upon which the issue hinges is whether the letter sent by the defendants to the mayor and city council was written and published under such circumstances as to bring it within the class of communications which the law denominates qualifiedly or conditionally privileged communications. As stated by our Court of Errors and Appeals in *King* v. *Patterson* (*Court of Errors and Appeals*, 1887), 49 *N. J. L.* 417, 420; 9 *Atl. Rep.* 705, 706.

"The occasions which give rise to the privilege of speaking or publishing words which otherwise would be defamatory and actionable are various. Thus, memorials to officers of state respecting the conduct of magistrates and officers, comments by electors upon the character of candidates for office, communications in matters of public interest in which the public generally is concerned, communications in the interest of third persons or for the protection of the party's own interest, communications respecting the character of servants or the credit and responsibility of tradesmen, or made in the performance of social, moral or legal duties, come within the class of privileged communications. Whether the privilege is available as a defense depends upon the circumstances of the particular case—the situation of the parties, the person to whom, the circumstances under which, and the manner in which the communication was made. A publication which in one case would be justifiable, in another case would be without justification. A criticism of the public acts of a candidate for office may be inserted in a public newspaper or be pro-

claimed by a circular, but such publicity given to comments derogatory to the character of a servant or to the financial standing of a trader would be illegal."

In *Finkelstein* v. *Geismar*, 91 *N. J. L.* 46; 106 *Atl. Rep.* 209; *affirmed*, 92 *N. J. L.* 251; 106 *Atl. Rep.* 209, the rule was stated as follows:

"A communication is qualifiedly privileged where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person to whom he makes such communication in the performance of such duty, or where the person is so situated that it becomes right in the interests of society that he should tell third persons certain facts, which he in good faith proceeds to do."

In *Harrison* v. *Bush*, 85 *E. C. L.* 348, Lord Chief Justice Campbell stated the rule as follows:

"A communication made *bona fide* upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, although it contains criminatory matter which, without this privilege, would be slanderous and actionable."

This statement of the rule was approved by Chief Justice Gummere in *Lawless* v. *Muller*, 99 *N. J. L.* 9 (at *p.* 12); 123 *Atl. Rep.* 104.

A communication which is qualifiedly privileged is not actionable unless maliciously made. If there is express malice, then the defense of privilege must be overruled. By express malice in this connection is meant some motive actuating the defendant different from that which *prima facie* rendered the communication privileged and being a motive contrary to good morals. The existence of such a motive may be legitimately gathered from the character of the defamatory communication—as, if the terms used be utterly beyond and disproportionate to the facts which the defendant had reason to believe; or from the circumstances under which the communication is made—as, if the defamatory matter is communicated to those who have no interest or concern in it; or from any extraneous facts which tend to prove it. *Finkel-*

*stein* v. *Geismar, supra; Fahr* v. *Hayes,* 50 *N. J. L.* 275; 13 *Atl. Rep.* 261.

The burden of proof is upon the plaintiffs to establish that the communication was libelous. On the other hand, the burden of proving that the occasion of publication was privileged is on the defendants. Where the communication is privileged it is for the plaintiffs to establish the existence of malice. *King* v. *Patterson, supra.*

It is therefore incumbent upon me as trier of the facts to determine from all of the evidence, both testimonial and documentary, whether the defendants issued and published the letter in question, marked *Exhibit "P-3"* in evidence, under circumstances reasonably believed by the defendants to exist which cast on them the duty of publishing such communication.

I have carefully considered all of the testimony and exhibits and I find as a fact that the defendants have established by a preponderance of the evidence that they had reasonable cause to believe that circumstances existed which cast upon them the duty of addressing the communication, *Exhibit P-3,* to the mayor and council of the City of Garfield.

The Garfield Taxpayers' Association was formed to "promote and encourage the development of the City of Garfield; to further and protect the interests of property owners in the City of Garfield; to acquaint the people with the methods of raising tax moneys in the municipality; to contest useless municipal expenditures; and to do any and all other things to the end that municipal expenses may be reduced and taxes lowered correspondingly," and "to gather, receive and disseminate such information with reference to municipal taxation and improvement as may seem helpful to the members * * *." Amended certificate of incorporation of Garfield Taxpayers' Citizens Association, *Exhibit P-12.* The chief reason for the existence of the defendant association is to enable its membership to take concerted action on matters of public interest relating to municipal affairs and particularly on questions of taxation. I find as a fact that the defendant association and its president in issuing and publishing the communication in question, acted under the belief,

which I find to be reasonable under all of the circumstances, that they were performing their civic duty as taxpayers and performing the function for which the defendant association was incorporated. I find that they did not act recklessly without inquiry into the source of the rumors, but on the contrary, that they proceeded with care and deliberation. It appears that the matter was discussed at a regular meeting of the association; that a committee was appointed to investigate the situation and that it was only after the coming in of the report of the committee that the association ordered that the request for a grand jury investigation be sent to the city council. The communication complained of was thereupon addressed to the mayor and city council pursuant to the order of the membership.

I conclude upon the facts as I have found them that the communication was qualifiedly privileged. I find further that the plaintiffs have failed to prove by a preponderance of the evidence that the defendants were motivated by malice. My finding is to the contrary, namely, that the defendants were actuated solely by their desire to render a public service. This is apparent not only from the caution with which they proceeded, to which reference has been made hereinabove, but also from the nature and contents of the communication and the fact that it was addressed to the chief executive officer and governing body of the municipality, both of whom are charged with responsibility for the proper functioning of the municipal government. If a lawfully incorporated organization of citizens and taxpayers cannot respectfully request the mayor and council of their city to cause an official investigation to be made of reports of graft and corruption which have been disseminated through the community, then we have not democracy but despotism. As stated by the court in *Howarth* v. *Barlow*, 113 *App. Div.* 510; 99 *N. Y. S.* 457, 459:

"The people are not obliged to speak of the conduct of their officials in whispers or with bated breath in a free government, but only in a despotism."

In that case a communication by a member of the village taxpayers' association to the president of the village with reference to the propriety of bills presented for audit by the

plaintiff, clerk of the board of village trustees, was held qualifiedly privileged. The court held that:

"The occasion of the communication of the defendant to the president of the village was qualifiedly privileged, which was pleaded as a defense, and the jury should have been charged (if the case be one for the jury) that unless the plaintiff proved by a preponderance of evidence that the words of the defendant were spoken maliciously, such privilege shielded the defendant, and the verdict had to be in his favor; that it would not be enough for the jury to find that the intent attributed by the plaintiff to the defendant was false, but that they must find in addition that the defendant was actuated by a malicious motive in expressing it in order to render a verdict against him."

The court held that it was error to charge "that if the jury find from the evidence that the words uttered were such as imputed crime or tended to injure him in his business, that the plaintiff is entitled to a verdict." See, also, A. L. I., Restatement of Torts, § 598; Previn v. Tenacre, Inc. (C. C. A. 3d, 1933), 70 Fed Rep. (2d) 389.

The processes of democracy require a comprehensive forthright and open discussion of public problems and of the acts and conduct of public servants. So long as the citizen acts in good faith upon reasonable cause and solely out of a desire to serve the public weal his utterances in the nature of Exhibit P-3 are privileged. I find that the communication, if libelous, was qualifiedly privileged; that it was made in good faith and without malice and for the purposes giving rise to the privilege.

Judgment for the defendants.