70 N.J. Super. 355 (1961)
175 A.2d 698
METALSALTS CORPORATION, A CORPORATION OF THE STATE OF DELAWARE, PLAINTIFF,
v.
ROBERT O. WEISS, DEFENDANT AND THIRD-PARTY PLAINTIFF,
v.
JOHN ELLIOTT, R.C. CHANDLER, EDWARD WALSH, ARTHUR L. GOESCHEL, NATHANIEL GRIER, PAUL E. DOHERTY AND ELLEN B. ELLIOTT, THIRD-PARTY DEFENDANTS.
ROBERT O. WEISS, PLAINTIFF,
v.
METALSALTS CORPORATION, A CORPORATION IN THE STATE OF DELAWARE, DEFENDANT.
Superior Court of New Jersey, Chancery Division
Decided November 10, 1961.
*357 Mr. Leo Rosenblum, attorney for plaintiff and third-party defendants.
Mr. George Warren, attorney for defendant-counterclaimant Robert O. Weiss.
GRIMSHAW, J.S.C.
This matter involves two separate, but related, actions. In the action instituted by Robert O. Weiss (hereafter called Weiss) he asks that this court compel Metalsalts Corporation (hereafter called Metalsalts) to comply with the terms of a judgment rendered by the New York Supreme Court. Metalsalts contests Weiss' right to the relief sought on the ground that the decision of the New York Supreme Court has been appealed by Metalsalts and that any proceedings in aid of execution of said judgment are stayed pending the disposition of the matter by the Appellate Division of the New York Supreme Court.
Metalsalts, in a separate action, asks this court to restrain Weiss from transferring his right in a patented fungicidal and bacteriological compound allegedly the property of Metalsalts. Weiss contests Metalsalts' right to the relief sought and has counterclaimed in defamation against certain directors and stockholders of Metalsalts for statements contained in the minutes of the meetings of the board of directors and stockholders which relate to activities of Weiss during his tenure as president of the Metalsalts Corporation.
The third-party defendants, in their answer to Weiss' counterclaim, maintain that the alleged defamatory statements are truthful; that these statements were absolutely privileged since they were made in connection with an arbitration hearing; and if said statements were not absolutely privileged, they are qualifiedly privileged since they were made by parties who were under a duty to communicate the existence of such facts to the individuals charged with the responsibilities of corporate management of Metalsalts.
Weiss, in the suit wherein he is the defendant and counterclaimant, has sought certain information in interrogatories *358 propounded to defendant Paul E. Doherty, who is house counsel, a stockholder and a member of the board of directors of Metalsalts. Weiss seeks Doherty's source of information for a "report" made by Doherty to the board of directors of Metalsalts concerning certain improprieties allegedly prevalent during Weiss' presidency of Metalsalts. Doherty contests Weiss' right to the source of his information, claiming the privilege of attorney-client and that the subject matter of the interrogatories is privileged as the work product of a lawyer made in connection with a quasi-judicial proceeding. Doherty therefore argues that the interrogatories asked by Weiss are improper objects of discovery. Weiss questions the basis for the claimed privilege, arguing that when Doherty made the investigations for the board of directors he was not performing a function peculiar to an attorney, and that in any event, Metalsalts waived the attorney-client privilege when its officers testified to the existence of Doherty's investigation at the arbitrators' hearing concerning Weiss' discharge.
In speaking about the attorney-client privilege, Chief Justice Vanderbilt said in In re Selser, 15 N.J. 393 (1954), at pages 405-406:
"Since it results in the exclusion of evidence, the doctrine of privileged communication runs counter to the fundamental theory of our judicial system that the fullest disclosure of the facts will best lead to the truth and ultimately to the triumph of justice. * * *
In adjusting this conflict in policy our courts have uniformly recognized that the privilege is not absolute, but rather an exception to a more fundamental policy. It is therefore to be strictly limited to the purposes for which it exists. Since the recognition of the privileged communication between attorney and client rests in the suppression of the truth `the privilege should be strictly construed in accordance with its object.' * * * `The privilege is an anomaly and ought not to be extended.' * * * `The rule of privilege, having a tendency to prevent the full disclosure of the truth, ought to be construed strictly.'"
In Hansen v. Janitschek, 57 N.J. Super. 418 (App. Div. 1959), Judge Conford stated, at page 433:
*359 "The attorney-client privilege has a well-defined place in our jurisprudence, and where it is properly applicable, must be given as broad a scope as accords with its rationale  safeguarding a client's freedom from apprehension in consulting his legal advisor, assured by removing the risk of disclosure by the attorney, even at the hand of the law. * * * Nevertheless, since the privilege results in the exclusion of evidence, the doctrine `runs counter to the fundamental theory of our judicial system that the fullest disclosure of facts will best lead to the truth and ultimately to the triumph of justice.' * * * It is therefore to be strictly limited to the purposes for which it exists."
And, at page 434:
"It is the generally recognized rule that the privilege applies only to communications made to the attorney where the `strict relation of attorney and client exists,' not where he acts as an agent or an attorney in fact for another. The activity must be `peculiarly within the province of an attorney at law.'"
In the instant case, Doherty was a member of the board of directors and a stockholder of Metalsalts as well as its house counsel. Exactly what position he occupied when he made the investigation into the conduct of Weiss is anything but clear.
The purpose of our discovery rules is to develop a clear factual picture of the relative positions of the parties.
I find that no attorney-client privilege existed. The affidavits before the court clearly indicate that Doherty was not asked to conduct his investigation in his capacity as a professional legal advisor, nor was his investigation an activity peculiarly within the province of an attorney.
I am also of the opinion that the claim of Doherty that the source of information was part of his work product is untenable. Benefit of the work product privilege is limited, under our rules, to an attorney in the collection of facts for his client's case. The existence of a serious doubt as to Doherty's status provides the basis for finding the inapplicability of the work product rule as expressed in R.R. 4:16-2.
*360 The next question is whether or not Doherty's motion for summary judgment regarding Weiss' counterclaim for defamation should be granted. I am of the opinion that it should not be.
"It is a fundamental principle that motions for summary judgment are granted with great caution and that it must `palpably' appear there is no factual issue, and that all doubts are resolved against the moving party's affidavits." Mazzilli v. Accident, etc., Casualty Ins. Co., etc., 26 N.J. 307 (1958). See, also, Devlin v. Surgent, 18 N.J. 148 (1955), and R.R. 4:58-3.
In the instant case Doherty argues that the allegedly defamatory remarks made about Weiss were absolutely privileged since they were made in connection with a quasi-judicial proceeding. The mere fact that Doherty makes such allegations does not, however, establish that said statements were in fact made in connection with such a proceeding. So long as a question of fact exists as to whether an allegedly defamatory statement is or is not made in connection with a judicial or quasi-judicial proceeding, a court must deny a motion for summary judgment which seeks to dismiss a complaint on that ground.
I am also of the opinion that Doherty's defense of qualified privilege cannot possibly constitute sufficient grounds upon which to base summary judgment in his favor. The existence of the qualified privilege claimed by Doherty, of necessity, requires factual development to the point where it is clear that the communications were made by Doherty under circumstances which "exist, or are reasonably believed by (Doherty) to exist, which cast on him the duty of making a communication" to the board of directors of the Metalsalts Corporation. Finkelstein v. Geismar, 91 N.J.L. 46 (Sup. Ct. 1917). Furthermore, even assuming that Doherty can show the existence of circumstances which create a qualified privilege to defame, Weiss may overcome this defense by showing the existence of malice. See Savage v. Stover, 86 N.J.L. 478 (Sup. Ct. 1914), affirmed 87 *361 N.J.L. 711 (E. & A. 1915). The question of whether or not malice existed is clearly a question of fact.
One further question is raised by the parties. Weiss and his New Jersey counsel have requested that I admit Kenneth B. Ray, Esquire, of the New York Bar, pro hac vice, for the trial of this case and all proceedings related thereto. Although Mr. Ray is experienced in the field of patent law and although he represented Weiss in the arbitration hearing in New York, I am of the opinion that he should not be admitted to practice in this case. There is no indication that Metalsalts' case against Weiss requires any experience in the patent field. In any event, the possibility is always open to New Jersey counsel to confer with Mr. Ray and, if necessary, call him as a witness in the trial of Metalsalts' claim against Weiss.
Judgment accordingly.