### In re GRAND JURY PROCEEDINGS.

### Application of [XYZ] TO QUASH SUBPOENA FOR PRODUCTION OF RECORDS.[1]

**Misc. No. 79–144.**

United States District Court,
D. New Jersey.

April 25, 1980.

---

1. To avoid disclosure of the identity of the witness subpoenaed to produce the records to the Grand Jury, the caption and the opinion use a fictitious name. Appeal was dismissed as moot, 638 F.2d 1235 (CA–3 1981) and this opinion is now released for publication to record the question presented below and the rationale for its disposition.

Jerald Oleske, Hackensack, N. J., and Jerome P. Coleman, New York City, for the witness [XYZ].

Robert J. Del Tufo, U. S. Atty., by Mark Malone, Asst. U. S. Atty., Newark, N. J., for the United States.

## OPINION

BIUNNO, District Judge.

On February 27, 1980, a grand jury subpoena issued from this court under its seal and signed by the clerk, at the request of the U.S. Attorney, directing [XYZ], a credit reporting company, to appear before the grand jury on March 11, 1980 and to produce certain documents consisting of the credit information in its possession regarding a number of individuals.

Discussions evidently ensued between [XYZ] and the U.S. Attorney in respect to the question whether the grand jury subpoena was an "order of a court having jurisdiction to issue such an order", in view of the fact that although signed by the clerk under the seal of the court, it was issued at the request of the U.S. Attorney and was not signed by a judge of the court.

The question arises because of a provision in the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq., as added by Pub.L.91–508, which took effect April 24, 1971 (180 days after enactment).

> The congressional purpose, as stated, was " * * * to a require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this [Act]."
> See, 15 U.S.C. § 1681(b).

Administrative enforcement powers to secure compliance with the Act is placed in the hands of the Federal Trade Commission (with exceptions not pertinent here), by 15 U.S.C. § 1681s.

The Fair Credit Reporting Act is a federal enactment dealing with a subject that has been largely a matter of state law, largely concerned with claims for defamation. Traditionally, matters of this kind have arisen in cases where a credit report contains information that is inaccurate and unfavorable. The widely recognized rule is

that so long as the communication is made bona fide on a matter in which the reporting person has an interest or duty, and is made only to another who has a corresponding interest or duty, the communication is "privileged", even though incorrect and defamatory, and cannot be sued on.

At common law, proof of malice in the making of a defamatory communication was an essential element of the claim, but malice was inferred in law if it were shown that the communication were false and defamatory.

However, in cases where "privilege" of this kind was shown no such inference in law arose, and it was necessary for the plaintiff, *as part of his case*, to prove "actual malice" or face dismissal or directed verdict.

Without exploring the subject in great detail, see decisions such as *Rothholz v. Dunkle*, 53 N.J.L. 438, at 440, 22 A. 193 (E. & A., 1891); *King v. Patterson*, 49 N.J.L. 417, 9 A. 705 (E. & A., 1887); *Finkelstein v. Geismar*, 91 N.J.L. 46, 106 A. 209 (Sup. 1917), *aff'd*, 92 N.J.L. 251, 106 A. 209 (E. & A., 1918), which discuss the major English cases and leading cases from other jurisdictions.

A more recent ruling is *Jorgensen v. Pennsylvania R. Co.*, 25 N.J. 541, at 562–569, 138 A.2d 24 (1958).

While the cases use the word "privilege", it is not in the same sense the word is used in connection with evidence law; rather, it is a form of justification in the sense that it is a privilege to make the communication under the conditions stated. And the privilege is "qualified" by the conditions of the rule. In modern terms, it might be called a "qualified immunity" from liability.

In some instances, of course, defamatory statements are absolutely privileged, see *Toft v. Ketchum*, 18 N.J. 280, 113 A.2d 671 (1955), affirmed on reargument, 18 N.J. 611, 114 A.2d 863 (1955).

In any event, Congress has recognized both the need and importance of credit information and the existence of credit reporting as a means to fill that need, 15 U.S.C. § 1681(a), though the expression is narrowed to remain within the confines of federal power.

What the Act does is to specify some restrictions on the reporting of certain kinds of information for that purpose, 15 U.S.C. § 1681c, regulate the preparation and provide means for correction of "investigative" reports, § 1681d, require reporting agencies to establish internal controls to achieve compliance, 15 U.S.C. § 1681e, limit the circumstances under which a consumer report may be furnished, 15 U.S.C. § 1681b, f, g, and h, among other things, and create federal civil causes of action in certain circumstances, 15 U.S.C. § 1681n and o, as well as denounce certain conduct as crimes, 15 U.S.C. § 1681q and r.

A reporting agency is allowed to furnish a consumer report "in response to the order of a court having jurisdiction to issue such an order," 15 U.S.C. § 1681b(1). It is also, and independently of that provision, allowed to furnish a governmental agency (presumably at any level) with name, address, former addresses, present and former places of employment, 15 U.S.C. § 1681f.

The reporting agency here, after arranging to postpone the date for appearance to April 29th, filed a notice of motion to quash the subpoena, along with supporting papers, on April 24th, returnable on April 25th, and the matter was heard.

The issue evidently arises because the Federal Trade Commission (FTC), although it seems not to have adopted any rule or regulation on the point, see 16 C.F.R. § 1.71 to § 1.73; § 600.1 to § 600.6, has issued a number of letters in the nature of staff opinions not binding on FTC, reaching the conclusion that a "grand jury subpoena" is not a "court order" within the meaning of 15 U.S.C. § 1681b(1). District courts elsewhere have evidently divided on the point.

The Court of Appeals for the Ninth Circuit, on an appeal from bank fraud and mail fraud convictions, has said:

"Defendants' argument that a grand jury subpoena is not a 'court order' is specious." *U. S. v. Kostoff*, 585 F.2d 378, at 380 (CA 9, 1978).

Considerable reliance was placed on an FTC brief amicus, dated December, 1978, in No. 78–1665 before that same court. Inquiry of the clerk there discloses that argument is set for June 5, 1980 at Pasadena.[2]

■ In any event, it is beyond question that the language of 15 U.S.C. § 1681b(1), referring to an "order of a court" reflects no intent to specify what kind of order or its form is within the expression. An "order of a court" may be oral, as in *Comm. of Pennsylvania v. Local Union 542, (Appeal of Freedman)*, 552 F.2d 498 (CA 3, 1977). It may be a paper, bearing the word "ORDER", signed by a judge or other judicial officer. Or it may be a subpoena, writ of execution or other process.

The All Writs Act, 28 U.S.C. § 1651 authorizes federal courts to issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law. And 28 U.S.C. § 1691 *directs* that:

"All writs and process issuing from a court of the United States shall be under the seal of the court and signed by the clerk thereof."

A subpoena, whether "ad testificandum" or "duces tecum", like a summons or execution, is process, a writ. See Black's Law Dictionary.

■ The subpoena to testify before a grand jury, as used in this court (Form AO–110) begins with the words: "You are commanded to appear in the United States District Court ... to testify before the Grand Jury, and bring with you ..." (whatever is specified if documents or tangible things are to be produced).

While procedures and forms in various courts may vary from one jurisdiction to another, the procedure for federal courts is

specified by Congress in 28 U.S.C. § 1691, above. The procedure and form specified in no way alter the *nature* of the subpoena, a writ or process, "issuing from a court of the United States."

*In re Grand Jury Proceedings*, 486 F.2d 85 (CA 3, 1973) (*Schofield I*) is not to the contrary in the sense of this case. The fact that a subpoena is what amounts to an ex parte order of the court and so is open to challenge, or modification, on one or more of the many grounds available, some of which are detailed in *Schofield I,* does not alter its nature as a court order for the purposes of the issue here.

The production of credit reports pursuant to court order was obviously listed as permitted conduct because such material may be relevant evidence in all manner of court proceedings. Congress had no intention to invade the judicial sphere. It is of some significance that the other permitted uses listed by § 1681b are all related to the normal and ordinary uses for which credit reports are prepared. The judicial use may be for entirely different purposes, and more likely is for different purposes.

More to the point is *U. S. v. RMI Co.*, 599 F.2d 1183 (CA 3, 1979) making clear that submission of papers to a grand jury is itself privileged and is secret. Rather than engage in the fiction that the subpoena is not a court order, credit agencies would be better advised to seek protective orders for the benefit of the persons whose records may be called for. Those persons, who may not be party to any litigation that ensues, may otherwise not receive notice that their reports are about to be disclosed to others, or received in evidence. NL Industries, Inc., was fortunate enough to receive that notice and initiated the proceedings in the *RMI* case.[3]

---

2. That case is now reported. See, *In re Subpoena Duces Tecum etc.; U.S.A. v. TRW*, 633 F.2d 825 (CA9, 1980). It limits *Kostoff* to its context, and holds that a grand jury subpoena is not a "court order" within the meaning of the Fair Credit Reporting Act.

3. Another recent decision in this Circuit ruling that the disclosure of privileged material under

conditions that are themselves privileged does not result in loss of the privilege is *Matter of Grand Jury (Appeal of Markowitz)*, 603 F.2d 469, at [7], pp. 474–475 (CA3, 1979). See, also, proposed Fed.Ev.Rule 511 (not adopted), last sentence, and Advisory Committee Note, as transmitted to the Congress by order of the Supreme Court of the United States dated November 20, 1972. Compare N.J.Ev.Rule 37,

The motion to quash is ill–advised, groundless and is denied. By separate order the United States is directed not to disclose the documents produced by the credit company to anyone other than the Grand Jury except as allowed by F.R. Crim.P. 6, without leave of court after notice to the persons whose records are produced.

To avoid the need for individual protective orders, it would be well to adopt a standing order or local rule to provide like protection in all cases.

second paragraph [N.J.S.A. 2A:84A–29] and comments thereto as published in 1980 Edition of New Jersey Rules of Evidence (Gann Law Books, Newark, N.J.).