EDWARD F. MERREY, DEFENDANT IN ERROR, v. GUARD-
IAN PRINTING AND PUBLISHING COMPANY AND
CLARENCE H. BAXTER, PLAINTIFFS IN ERROR.

Argued June 2, 1909—Decided November 18, 1909.

1. The truthfulness of a libel is a complete defence in a civil action,
   but it must be pleaded fully and as to every particular and be
   strictly proved to be availed of.
2. The rule that, in actions of libel, the justification pleaded must
   be as broad as the charge, is not to be construed to mean that it
   must embrace every libelous charge contained in the declaration.
   When the charges made are separate and distinct, the defendant
   may justify as to some and plead otherwise as to others.
3. Whether a libel was published of the plaintiff, or whether by
   the person mentioned in the libel the plaintiff was intended, is
   a question of fact for the jury.
4. Under the plea of general issue the truth of the libelous matter
   may be proved, but to the extent only of rebutting the presump-
   tion of malice.
5. The rule laid down by Chief Justice Cockburn in *Campbell* v.
   *Spottiswood*, 32 L. J., Q. B. 185, "that where the public conduct
   of a public man is open to animadversion, and the writer who is
   commenting upon it makes imputations on his motives, which
   arise fairly and legitimately out of his conduct, so that a jury
   shall say that the criticism was not only honest but also well
   founded, an action is not maintainable," approved.
6. Whether such comments were made *bona fide* or not; whether
   they exceeded the limits of fair criticism; whether the impu-
   tations upon the plaintiff's motives arose fairly and legitimately
   out of his conduct, are questions for the jury, under proper in-
   structions.

On error to the Passaic Circuit Court.

This is an action for libel brought by Edward F. Merrey,
who was city counsel of the city of Paterson, against the
Guardian Printing and Publishing Company and Clarence
H. Baxter, owners and publishers of the newspaper called
"The Paterson Guardian."

The declaration alleges that the plaintiff, being such city
counsel, advised the board of aldermen, at its request, con-
cerning the authority vested in such board by law, to revoke

a license to sell liquors in said city because of the violation by the holder thereof of such law in selling liquors on Sunday, that the said board had no authority to revoke a license unless the license was in force at the time of such revocation, and that on the 9th of May, 1908, the defendants falsely and maliciously composed and published of and concerning the plaintiff in said newspaper a false and defamatory libel, as follows:

## "As Others See Us.

*"In view of the recent efforts made by Mayor McBride and other citizens to regain some of the prestige which Paterson had lost, it is not pleasant to admit the justice of the criticisms made in state papers on the actions of the aldermen and city counsel in making it impossible to punish violation of the excise laws.*

"While the taint of anarchy was a blight upon this city it does not begin to equal in evil results the knowledge that our city officials, the men sworn to uphold the law, are the very ones to use the power of office to protect lawbreakers and make it impossible by evasion and legal quibble, to punish open violation of the law.

"That hurts Paterson most, far more than anarchy, because it cannot be truthfully contradicted. *The recent action of the board of aldermen and city counsel has brought forth caustic comment* that does this city incalculable harm, because it is true. *The following extract from two of the leading papers of the state will serve to show how Paterson's reputation is being blasted by the acts of its own officials."*

And in the second count of said declaration, alleged the publication concerning the plaintiff on the 16th day of May, 1908, of another article headed:

## "Retraction is Refused.

*"Guardian Printing and Publishing Company and Clarence H. Baxter:*

"Gentlemen—In 'The Guardian' of Saturday evening, May 9th, 1908, there appeared the following libel of and

concerning Edward F. Merrey, the present city counsel of the city of Paterson:

[Here follows a copy of the article as above set forth.]

"I demand on behalf of Mr. Merrey that so far as this publication affects him, that you retract this libelous charge in as public a manner as that in which it was made.

"WILLIAM B. GOURLEY,

"*Attorney for Edward F. Merrey.*"

Then follow the reasons given by the newspaper for refusing a retraction, the following extracts from which are set out to show the parts of said second article which were justified in the plea of the defendants as hereinafter set forth:

" 'The Guardian's' criticism of the board of aldermen and the city counsel was confined to their official acts in connection with the administration of the excise laws in this city—acts which led reputable newspapers in other cities to point the finger of scorn at Paterson, and deride it as a community where delay and evasion by the board of aldermen, and legal quibble by the city counsel, afforded official protection to excise offenders, and made it impossible to punish them for open violation of the law.

" 'The Guardian's' criticism of the city counsel was based upon an official opinion given by him to the board of aldermen.

"City Counsel Merrey owes his election to the board of aldermen, upon which rests responsibility for the proper administration of the excise laws in this city. The enactment by the legislature of which is known as the Bishops' law, made it imperative for the aldermen to pass an ordinance to require the removal of all screens in saloons.

"Responsibility for enforcing this ordinance and other provisions of the excise law rests in the police department. Officers detailed to enforce the law were able to secure drinks in several places on Sunday. Chief Bimson made complaint before the board of aldermen and offered evidence that was conclusive proof of guilt.

"After a long delay a date was set for trial in April, but

the cases were postponed. Trial was finally set for early in May, several weeks after the offenses had been committed.

"The offenders were permitted to go without punishment.

"The aldermen justified their remarkable action through an official opinion given by City Counsel Merrey, who held that these men could not be punished by taking their licenses away, as the excise law requires, because the license period within which the offense was committed had expired a few days previously. They could be granted new licenses, but could not be punished for violation of the law under the old licenses. Because of that opinion and the subsequent action of the board of aldermen, Paterson was placed in the position of being unable to enforce the excise laws through its own officials. This was made the subject of much unfavorable comment in metropolitan and state newspapers, and Paterson was placed in a bad light before the outside world."

The defendants pleaded, first, not guilty. Secondly, in regard to the article "As others see us," as to the words above italicized in said article, that the same were true and were composed and printed with good motives and for justifiable ends; and for a third plea as to the publication of the 16th of May, 1908, that the facts stated in that part of the article which is hereinabove set forth, were true and were lawfully composed and printed with good motives and for justifiable ends; and for a further plea the defendants interposed as to both of said articles that they were fair and *bona fide* comment upon the conduct of the plaintiff in his public character and office as city counsel, and were so printed without any malicious motive and for the public interest and benefit in the usual course of business and duty of the defendant as a publisher of a newspaper and as a public journalist and editor of the paper, and are therefore privileged.

At the trial it was admitted that the defendants wrote and published the articles.

The plaintiff also produced evidence that he was informed about March or April, 1908, by the city clerk that three excise complaints had been filed by the chief of police. They had not been prepared in the city counsel's department. Plaintiff

looked at them and told the city attorney to take charge of them. At the meeting of the board of aldermen on April 6th a resolution was prepared by the city attorney directing the parties mentioned in these complaints to show cause on April 27th why their licenses should not be revoked. On that date the city attorney telephoned to the plaintiff that the board was about to proceed with the trial and asked the plaintiff to attend, which he did. A motion to arraign the men having prevailed, their attorneys appeared and asked for an adjournment on the ground that the meeting had not been regularly called. The plaintiff having decided that the meeting was regular, the accused persons pleaded not guilty. Their attorneys then asked for further time as they were not prepared with witnesses. The plaintiff then said that the trials ought to proceed, when one of the aldermen asked the plaintiff if an adjournment was granted would it be impossible to try the cases, for the licenses would then have expired, to which the plaintiff replied that at that time he was not prepared to state whether that was so, but that there was much weight in the alderman's contention. After some discussion the hearing was adjourned until the following week, May 4th, at which date, council having reassembled, it was moved that the trials proceed, when an alderman asked the plaintiff if anything could then be done, to which the plaintiff, as he testified, replied: "I having investigated decided that the only punishment that could be inflicted under the proceedings there taken was the revocation of the licenses granted May 1st, 1907, and they having expired at that time, nothing could be done, and somebody moved, and it was carried, that the complaints be dismissed, which was done."

At the trial the court refused to nonsuit the plaintiff and refused to direct a verdict for the defendants. The court, however, at the end of the charge to the jury, upon the request of the plaintiff, gave the following instruction: "As no justification can be made under the pleas filed in this case of that part of the published article of May 9th, 1908, which the defendants admit publishing in relation to the plaintiff's official position being used to protect lawbreakers, the plaintiff

is entitled to a verdict. As I read the plea I so charge you." The jury rendered a verdict of $1,350 damages.

Before Justices REED, BERGEN and VOORHEES.

For the defendant in error, *William B. Gourley.*

For the plaintiffs in error, *Michael Dunn* and *Griggs & Harding.*

The opinion of the court was delivered by

VOORHEES, J. Among the errors assigned why the judgment should be reversed is the court's refusal to nonsuit and to direct a verdict for the defendants. It is manifest that at the close of the defendants' case there had not developed a condition which the court could deal with as a matter of pure law; hence these motions were properly refused. The court, however, at the end of the charge, at the request of the plaintiff, instructed the jury as follows: "As no justification can be made under the pleas filed in this case of that part of the published article of May 9th, 1908, which the defendants admit publishing, in relation to the plaintiff's official position being used to protect lawbreakers, the plaintiff is entitled to a verdict. As I read the plea I so charge you." This was really a direction to the jury to find a verdict for the plaintiff and assess his damages. The court predicated its right to so direct upon the pleas filed by the defendants.

It is true that the second plea is not a plea of truth and justification as to the whole article. A reading of the articles will disclose the fact that certain accusations are made against the city counsel, as such, and certain others are made against the city officials. The latter, by innuendo, have been by the plaintiff made to refer to himself; the former need no innuendo. All the accusations of the former class the defendants have by their pleas justified as true. The remaining class they defend under their plea of general issue and the other pleas.

The charges which were attempted to be justified are in

substance that the actions of the city counsel make it impossible to punish violation of the excise laws, and that the recent action of the city counsel has brought forth caustic comment, which does the city harm because it is true, and that the extracts from two leading papers serve to show how the city's reputation is being blasted.

The remaining charges, not justified, are that the men sworn to uphold the law use the power of office to protect lawbreakers and make it impossible to punish open violations of the law, and that hurts Paterson more than anarchy because it cannot be truthfully contradicted.

These two sets of accusations are quite separate. One is confined to the city counsel and is concerned with the violation of excise laws. The other refers to the city officials in protecting lawbreakers in general in open violations of the law. The truthfulness of a libel is a complete defence in a civil action, but it must be pleaded fully and as to every particular, and be strictly proved to be availed of. But the rule that in actions of libel the justification pleaded must be as broad as the charge is not to be construed to mean that it must embrace every libelous charge contained in the declaration. When the charges made are separate and distinct the defendant may justify as to some and plead otherwise as to others. *Lanpher* v. *Clark,* 149 *N. Y.* 472; *Holmes* v. *Jones,* 121 *Id.* 461; *Smith* v. *Tribune,* 4 *Biss.* 477.

Whether the defendants had succeeded in establishing the pleas of justification as to those charges to which these pleas were interposed and confined, was for the jury. The plaintiff's own testimony recited facts and circumstances in connection with the postponement and dismissal of the excise cases and regarding his own conduct from which a jury might have been satisfied of the truth of the charges. In any aspect it was not a question for the court.

As to the part not justified it was incumbent upon the plaintiff to satisfy the jury that he was included in the term "city officials." He asserted this to be the fact. "Whether a libel was published of the plaintiff or whether by the person mentioned in the libel the plaintiff was intended, is a ques-

tion of fact for the jury." *Van Vechten* v. *Hopkins*, 5 *Johns.*
211. Under the plea of general issue the truth of the libelous
matter also may be proved, but to the extent only of rebutting
the presumption of malice. Here also would arise a ques-
tion for the jury as to malice. For, if the jury were satisfied
of the truth of the charges, although the justification were
not specially pleaded, the presumption of malice would be
rebutted.

The defendants also asserted that the communication was
on a privileged occasion and constituted only fair comment
and criticism upon the public acts of a public official. This
they attempted to plead, although a formal plea to that effect
is not necessary to maintain such defence, which may be
availed of under the general issue. Comment of this kind
is not privileged by reason of the occasion in the strict legal
sense of that term. What is really meant is that fair and
*bona fide* comment and criticism upon matters of public con-
cern is not libel, and that the words are not defamatory.
*Henwood* v. *Harrison*, L. R., 7 C. P. 606; *Campbell* v. *Spot-
tiswood*, 32 L. J., Q. B. 185. See, also, *Burt* v. *Advertiser
Newspaper Co.*, 154 *Mass.* 238, 242.

That this is the correct view is apparent from the fact that
the burden of proving actual malice in cases of this class is
not thrown upon the plaintiff as it is in cases strictly of
privilege.

Although in *Gott* v. *Pulsifer*, 122 *Mass.* 235, a case con-
cerning the once famous Cardiff Giant, Chief Justice Gray
holds to the contrary, and says that "the editor of a newspaper
has the right, if not the duty, of publishing for the informa-
tion of the public, fair and reasonable comments, however
severe in terms, upon anything which is made by its owner
a subject of public exhibition, as upon any other matter of
public interest; and such a publication falls within the class
of privileged communications for which no action can be
maintained without proof of actual malice."

But without deciding which view is in the abstract correct,
a question for the jury is presented. If not a matter of strict
privilege, the jury are still to speak as to the *bona fides* and

fairness of the criticism. If one of privilege in its strict meaning, then the question of actual malice is for the jury.

In *Campbell* v. *Spottiswood, supra,* Chief Justice Cockburn says: "A line must be drawn between criticism upon public conduct and the imputation of motives by which that conduct may be supposed to be actuated; one man has no right to impute to another whose conduct may be fairly open to ridicule or disapprobation, base, sordid and wicked motives, unless there is so much as ground for the imputation that a jury will find not only that he had an honest belief in the truth of his statements but that his belief was not without foundation. I think a fair position in which the law may be settled is this: That where the public conduct of a public man is open to animadversion, and the writer who is commenting upon it makes imputations on his motives, which *arise fairly* and legitimately out of his conduct, so that a jury shall say that the criticism was not only honest but also well founded, an action is not maintainable." See 3 *Am. & Eng. Anno. Cas.* 647, where many authorities are collected.

The facts constituting the public conduct commented upon in this case were largely proved by the plaintiff. The occasion was one of public interest. Whether the comments were made *bonâ fide* or not, whether they exceeded the limits of fair criticism, whether the imputations upon the plaintiff's motives arose fairly and legitimately out of his conduct, were questions for the jury under proper instructions.

The trial court, however, evidently held the view that this defence was not admissible except in connection with a plea of justification and that the latter must be broad enough to include every charge laid, otherwise the direction to find for the plaintiff for failure properly to plead justification would not have been given.

By reason of this misdirection the judgment must be reversed, and a *venire de novo* awarded.