FRED A. HARTLEY, Jr., PLAINTIFF-RESPONDENT, v. NEWARK MORNING LEDGER CO., A CORPORATION OF NEW JERSEY, SAMUEL I. NEWHOUSE AND PHILIP HOCHSTEIN, DEFENDANTS-APPELLANTS.

Argued February 6, 1946—Decided April 25, 1946.

For the plaintiff-respondent, *Harry Green*.

For the defendants-appellants, *Osborne, Cornish & Scheck* (*Emanuel P. Scheck* and *Edward J. O'Mara*).

The opinion of the court was delivered by

CASE, CHIEF JUSTICE. Plaintiff is and for a number of years has been the elected representative from the tenth district of New Jersey in the national House of Representatives. In 1940 he was running for re-election, and during the summer preceding the election he addressed a joint meeting of the various organizations making up the German-American Federation of Essex County. Some of his acts, including his

attendance at that meeting, were aggressively criticized in the columns of the *Newark Star Ledger*. Two years later, when Hartley was again a candidate for re-election, the same newspaper published a series of news items and editorials arising in part out of the same incidents. These were made the subject of this libel suit by Mr. Hartley. The trial culminated in a verdict against the several defendants—the Newark Morning Ledger Co., owner of the newspaper, Samuel I. Newhouse, a stockholder, director, owner and publisher of the corporation, and Philip Hochstein, managing editor—in the amount of $24,000, being $6,000 on each of four counts. The defendants appeal from that judgment.

Appellants first argue that "the trial court erred in holding that truth is not a complete defense to a civil claim for libel." This is not precisely what the court held; it is appellants' interpretation of the legal effect of certain trial incidents consisting of two refusals by the court to charge and of a portion of the court's charge. Of the second refusal we find that the request was so framed as to constitute merely an abstract proposition of law and that consequently it was properly refused. "* * * A request to charge stating an abstract principle of law without any instruction to the jury as to its applicability is bad." *Hoffman* v. *Trenton Times*, 125 *N. J. L.* 450. As to the matter charged and now complained of there was no exception taken at the trial.

The first request to charge was: "The plaintiff cannot recover from the defendants for the publication of any matter which was true, no matter how defamatory, and regardless of the motives of the defendants in publishing it." The fault in appellants' position is well illustrated by the treatment in their brief of the opinion in *Merrey* v. *Guardian Printing and Publishing Co.*, 79 *N. J. L.* 177; affirmed, 81 *Id.* 632. Appellants quote therefrom as follows: "The truthfulness of a libel is a complete defense in a civil action * * *;" whereas the full sentence from which that abstract is taken is: "The truthfulness of a libel is a complete defense in a civil action, but it must be pleaded fully and as to every particular, and be strictly proved to be availed of." The complaint contained nine counts, each setting up a separate newspaper publication

as the libel there sued upon. The responsive portions of the answer contained no allegation of truth. The only part of the pleading which is disclosed by our study as going to the truth of the alleged libel is the "first separate defense to all counts" which reads as follows:

"All statements of fact printed and published by defendants or any of them about the plaintiff were substantially true, except statements attributed to others. As to statements of others, defendants have no knowledge as to their truth, but quoted them with substantial accuracy."

The defendants did not plead the truth of their publications fully and as to every particular. The fact of an exception without greater specification of the excepted matter is of itself a divergence from pleading the truth fully and as to every particular. Moreover, the repetition of libelous statements made by others is not *per* se justifiable. *Schwarz Brothers Co.* v. *Evening News Publishing Co.*, 84 *N. J. L.* 486, 490. Whether truth is pleaded specifically or simply under the general issue, the truth of the alleged libelous words may be proved to the extent of rebutting the presumption of malice, *Bingham* v. *Schindel*, 92 *Id.* 502; *Merrey* v. *Guardian Printing and Publishing Co., supra;* but the request to charge must be correct in all particulars, and the present request as framed did not go to that field of law nor to a distinction between compensatory and punitive damages.

Appellants further complain of the court's refusal to charge three additional requests relating to privilege. The first two of those requests were mere statements of legal principles unapplied to the issues of the case and therefore faulty for the reason heretofore given. This is the third request in its entirety: "The defendants are not liable to the plaintiff for publishing any matter qualifiedly privileged, even if untrue and defamatory, unless the defendants published the same with actual malice." It is to be observed that this language as it stands would not be intelligible to a jury; that, on the contrary, it would be misleading and confusing. In fact, without more, it is puzzling to a mind trained in the law. A qualified privilege is, of course, a limited privilege. What is the qualified privilege which, although less than full privi-

lege, will still give the defamer immunity unless the defamation be made with actual malice? Can every person who has any sort of a qualified privilege perpetrate a gross libel, whatever the circumstances and the nature of that libel, and be immune provided only he was not moved thereto by actual malice? How can it be known whether the perpetrator was privileged to publish the defamatory matter unless the character of and the qualification upon the privilege, and the facts of the publication, be stated? "The occasions which give rise to the privilege of speaking or publishing words which otherwise would be defamatory and actionable are various. * * * Whether the privilege is available as a defense depends upon the circumstances of the particular case—the situation of the parties, the persons to whom, the circumstances under which, and the manner in which the communication was made." *King* v. *Patterson*, 49 *N. J. L.* 417, 420. Clearly, the request was not so framed as to entitle the defendants to the benefit of it as an instruction to the jury.

Appellants next present that the trial court erred in each of fourteen rulings against the admission of testimony from a defense witness. It will serve no useful purpose to particularize the numerous questions or to go into the argument of law and fact advanced in support of the point. Sufficient to say that in our opinion the information sought by the questions was irrelevant to the issues of the trial and that the questions were therefore incompetent.

It is further contended that error was committed in permitting the plaintiff to answer this question: "As a result of your eighteen years of public life, what material things have you accumulated?" After objection made and exception noted plaintiff was permitted to testify:

"After twenty years of public life I have no material means to speak of. The only thing I have is the reputation that I have tried to build up during those twenty years of public life."

On defendants' motion the latter part of the answer was stricken. The first sentence remained. Much latitude is allowed the jury in arriving at the amount of the verdict in a libel suit; wherefore it becomes important that no incom-

petent proofs which may substantially affect the jury verdict either upward or downward should be admitted. The plaintiff's poverty was not attributed and was not attributable to the libel; and yet the plain purpose of introducing the testimony was to swell the verdict. The admission of such testimony tended to excite prejudices and sympathies foreign to the true merits of the case.

Some isolated words, not essential to the reasoning, in the concurring opinion of Mr. Justice Elmer in the case of *Sayre* v. *Sayre*, 25 *N. J. L.* 235, 253, are cited by respondent in support of the admission of the testimony. But that case came to the appellate court on the refusal of the trial judge to permit the defendant to inquire into the general bad character of the plaintiff in mitigation of damages, and the leading opinion was that of Chief Justice Green who said:

"Evidence touching the plaintiff's character, in mitigation of damages, may be offered to show that the defendant merely repeated rumors that were in circulation, and that the slander was not wantonly originated by him; with the view of showing the *animus* with which the words were spoken, in order to diminish the extent, or to qualify the character of the defendant's malice, and thereby to diminish the damages."

It is for the principle so enunciated that the case has since been accepted in our decisions. (*Cf. O'Brien* v. *Fraser*, 47 *N. J. L.* 349; *Hoboken Printing Co.* v. *Kahn*, 58 *Id.* 359; *Pier* v. *Speer*, 73 *Id.* 633; *Fodor* v. *Fuchs*, 79 *Id.* 529.) We consider that the citation does not support respondent's contention, and we find no supporting decisions in this jurisdiction. The appearance of support is afforded by scattered decisions, of which *Larned* v. *Buffington*, 3 *Mass.* 546, is an instance, in a few jurisdictions; but our study of such cases leads us to conclude that the expressions therein have relation to instances where the contemplated proofs had relevance to the issues. So, the remarks by the Massachusetts court in the last cited case were upon the effort by the defendant, not to show mere poverty on the part of the plaintiff, but to show the financial character of the man, namely, that he was and always had been a roving, worthless fellow, a "horse jockey" who, according to the theory of the defendant, would not be

seriously damaged by the libel; and, for whatever bearing it may have, it is to be noted that the refusal of the trial court to admit the testimony was sustained on the appeal. In line with this distinction is the statement of the trend of decisions given in 33 *Amer. Jur., Libel and Slander,* §§ 284, 288. We perceive no element of damage to the plaintiff arising out of the libelous publications in the fact that he, throughout his eighteen or twenty years of public life, had accumulated no wealth.

There are decisions, *Flaacke* v. *Stratford, 72 N. J. L.* 487; *Weiss* v. *Weiss, 95 Id.* 125, holding that the financial standing of a *defendant* in actions for libel or slander may be shown; but those cases go on a definite theory distinct from any which exist with respect to the question asked of the plaintiff in the instant case.

We conclude that the court erred in admitting the testimony and that the error may have been harmful.

It is further argued that the defendants' motions for a nonsuit and for a directed verdict should have been granted because of the insufficiency of plaintiff's proofs. But the defendants sued out a rule to show cause why a new trial should not be granted and stated various grounds, including this: "The verdict in the said cause was not based on the evidence but was the result of partiality, bias and prejudice." That ground comprehended the assumption that there was not credible evidence to sustain the verdict. *Dombroski* v. *Metropolitan Life Insurance Co., 126 N. J. L.* 545. The matter came on for hearing, and the court discharged the rule to show cause. The cited ground had not been exscinded. Consequently, under our practice, the appellants are not in position to argue error in the refusal to nonsuit or to grant a directed verdict. *Dombroski* v. *Metropolitan Life Insurance Co., supra; Valero* v. *McCabe, 133 Id.* 185.

But inasmuch as the case is to go back for retrial it is proper that court and counsel should be informed of our opinion that under the proofs the motions for nonsuit and direction were soundly denied on the merits. In addition to views pertinent to that issue elsewhere herein given we state our further belief that the existence of actual, or express,

malice was a jury question. A few of the publications which led us to this view are as follows: On August 7th, 1942, while this country was in the bitter throes of conflict with Germany and Japan, and the names of Hitler and Hirohito were hated synonyms for cruelty and treachery and all that was destructive of the American way of life, the *Newark Star Ledger* published the following:

"If we are to reward a record such as Hartley's with re-election to Congress, we may as well apologize to Hitler and Hirohito and call the whole thing off."

Under the circumstances, those were strong words. By thinly concealed reference the paper, on January 4th, 1942, held Hartley up to ridicule, which might be considered spiteful, by placing a conspicuous circle about the face of a convicted spy, in a photograph of an enemy group being herded off to prison, and calling attention to what was said to be a resemblance between the face enclosed within the circle and that of "a well known political figure."

To be contrasted with the foregoing is the editorial comment of the paper on September 19th, 1940, following a resume of the incidents of that summer:

"He (Hartley) cites his impressive 12-year record in Congress to refute those who suspect that 'Hartley is pro-Nazi.' That suspicion is unfounded. Congressman Hartley may have been indiscreet and imprudent. He may have exhibited an alarming lack of common sense, but it would be most unfair to accuse him of disloyalty or subversive intent."

That one who really thought of Hartley in the terms last set forth should give out the other publications bespeaks deep feeling of some sort. It was for the jury to say whether that emotion partook of malice.

Finally, it is said that the trial court erred in refusing to grant a new trial. The contention centers about the fact brought out in proofs taken on the proceedings for a new trial that George J. Borgos, a political associate of plaintiff who co-operated with him and was a witness for him at the trial, is married to a woman who is a sister to the wife of Edward B. Ott, one of the jurors. The families of the witness and of the juror do not live together. and the relations existing

between the two families and the several members thereof present no unusual conditions. The juror and the plaintiff were not acquainted and plaintiff denies that he knew of the connection between the juror and Borgos or between their respective wives. Concealment is alleged by the appellants, but there was no concealment unless the omission to make announcement of a fact unknown to the plaintiff is counted as a concealment; and partiality on the part of the juror is also alleged, but there is no indication of partiality unless such is to be inferred from the stated facts. We think that the trial court was not bound to resolve those contingencies against the plaintiff. The action of a trial court in granting or refusing a new trial is within the discretion of that court, *Wasker* v. *G. R. Wood, Inc.,* 114 *N. J. L.* 266, and is not reversed on an appeal from the judgment unless the judicial act is such an abuse of discretion as to shock reason and justice, *Nelson* v. *Eastern Air Lines, Inc.,* 128 *Id.* 46. Applying that standard, we find no adequate ground for reversal under that point.

The judgment below will be reversed for the erroneous ruling in the admission of evidence; and the record will be remitted to the end that a *venire de novo* issue; costs to abide the event.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Parker, Bodine, Donges, Heher, Perskie, Colie, Oliphant, Wells, Rafferty, Dill, Freund, McGeehan, JJ. 14.