68 N.J. Super. 542 (1961)
173 A.2d 300
ELEANOR J. NEIGEL, PLAINTIFF-APPELLANT,
v.
SEABOARD FINANCE COMPANY, A DELAWARE CORPORATION, AND HENRY J. SCHARFF, DEFENDANTS-CROSS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 24, 1961.
Decided July 14, 1961.
*545 Before Judges GOLDMANN, FOLEY and LEWIS.
Mr. Paul R. Kramer argued the cause for plaintiff-appellant (Messrs. Powell and Davis, attorneys; Mr. Paul R. Kramer, of counsel).
Mr. Edwin T. Ferren, III, argued the cause for defendants-cross-appellants (Messrs. Richman and Berry, attorneys).
The opinion of the court was delivered by LEWIS, J.A.D.
This case emanates from a finance company transaction. An alleged defamatory letter was the basis of a libel action for compensatory and punitive damages, which resulted in a verdict in favor of plaintiff for compensatory damages of $500. The proffered defenses were *546 truth and qualified privilege. A motion for new trial as to damages only was denied. The matter is now before us on cross-appeals.
Plaintiff, Eleanor J. Neigel, was employed as a work order specialist at the McGuire Air Force Base in New Jersey. On September 3, 1957 she and her husband, Charles A. Neigel, borrowed the sum of $304 from the defendant, Seaboard Finance Company, a Delaware Corporation, authorized to do business in the State of New Jersey, under an agreement to repay the loan in 24 monthly installments of $17 each. This was not the first transaction between the parties. As late as December 17, 1958 the Neigels were advised that they were preferred customers and eligible to receive additional loans. Plaintiff and her husband are now divorced; judgment nisi was entered February 8, 1960 and final judgment was obtained May 9, 1960.
The wife had separated from her husband in August of 1958 and obtained an agreement from him for the support of their children. The month following their separation (September 1958), plaintiff advised the finance company that she would assume the responsibility for the loan payments. Her conversation was with Henry J. Scharff, the collection manager, a defendant in these proceedings. The regular monthly payments were continued by plaintiff up to and including the month of December 1958. During the latter part of January 1959, plaintiff again called Mr. Scharff and explained to him that her husband had stopped making support payments for their children and, until something could be worked out, she would be late with her payments. Scharff, in his reply, indicated that he was not interested in her problems, he "just wanted his money."
Plaintiff's testimony on cross-examination is significant:
"Q. What I am getting at, you told us one of the reasons you discontinued making payments to Seaboard was because your husband discontinued making payments to you.
A. I told Mr. Scharff in one of our phone calls if I could pay any way myself, I would, but I couldn't without the support money."
*547 During the month of February 1959, the defendant Scharff telephoned to the plaintiff at her place of employment "between four and six" times, the calls becoming increasingly unpleasant. Plaintiff had specifically requested that he not call her at work "because there were people there and I didn't want everybody to know my business." She inquired as to why he did not contact her husband and she gave Mr. Scharff his telephone number. She further testified that Scharff advised her that "he was going to call my job, that I knew what that meant, the consequences."
On March 4, 1959 the defendant, Henry J. Scharff, sent the following letter to plaintiff's employer:
 "Seaboard Finance Company
 402 Trenton Trust Bldg.
 Lic. No. 398
 Trenton, N.J.
 March 4, 1959
Director of Personnel (Civilian) McGuire Air Force Base Trenton, New Jersey
Dear Sir:
We are writing to advise you regarding a situation that exists between your employee Mrs. Eleanor Neigel, and her husband Charles and this corporation.
On September 3, 1957, we made a loan to Mr. & Mrs. Neigel in the amount of $304.00 to be repaid in twenty-four installments of $17.00 each month. We are sorry to report that this contract has not been kept.
At the present time Mr. & Mrs. Neigel are having family trouble and it is their belief that since such is the case, they have the right to withhold payments while they continue their family feud.
We are not trying to use you as a collection agency but neither do we intend to stand idly by and allow these people to use your office as a weapon against us.
It is our request that you be kind enough to speak with Mrs. Neigel and inform them of the serious consequences that may arise if they continue to neglect this just debt.
Thank you for your cooperation.
 Best regards,
 Seaboard Finance Company
 /s/ Henry L. Scharff
 HLS/gvc Collection Manager"
*548 This letter was called to the plaintiff's attention by the Acting Personnel Director at her place of employment and was placed in plaintiff's suitability file. Dorothy R. Krehl, chief of the employee utilization branch of the civilian personnel office at the McGuire Air Force Base, testified that the personnel officer, herself, two other employees in her office and the chief of administration had access to the suitability files, and, under cross-examination, she said:
"A suitability file in the Air Force, I think, possibly could render the individual unsuitable for employment, possibly in the future or in certain positions depending upon the nature of the position. We would also use it in connection with any promotion at McGuire Air Force Base itself."
At the conclusion of the plaintiff's case, the defendant moved for judgment, which motion was denied. The defense rested, without offering any evidence, and again moved for judgment  specifically, that judgment be rendered on behalf of the defendant Seaboard Finance Company maintaining, in substance, that there was no proof in the record that Scharff had the authority, on its behalf, to act as he did. This motion was likewise denied. The case was then permitted to go to the jury, and resulted in a verdict for the plaintiff. The jury awarded compensatory damages in the amount of $500.
The substance of plaintiff's contentions on appeal is that (1) the offensive communication was not privileged and, even if it were, the evidence established malice in fact; (2) defendants did not prove the defense of truth or the defense of privileged communication; (3) the court erred in not admitting evidence as to the financial worth of the defendant Seaboard Finance Company on the issue of punitive damages; and (4) the court improperly instructed the jury on the law respecting "punitive damages" and "fair comment." The defendants, on cross-appeal, argue that the court properly excluded evidence of corporate worth; and that their motion for judgment should have been granted.

*549 I.
Privilege or immunity in the law of defamation is a matter of public policy in furtherance of our democratic and fundamental right of free speech. Coleman v. Newark Morning Ledger Co., 29 N.J. 357 (1959). It counterbalances the equally basic right to enjoy reputation "unimpaired by false and defamatory attacks." Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552, 557 (1955). Privilege may be absolute or qualified. The distinction is that complete protection is afforded by an absolute privilege, whereas a qualified or conditional privilege is protective only in the absence of ill motive or malice in fact. Ibid; Prosser on Torts (2d ed. 1955), sec. 95, p. 606 et seq.; 1 Harper and James, The Law of Torts, Defamation, sec. 5.21, p. 419 (1956).
In the case before us, the defendants asserted a qualified privilege. To constitute such an immunity, the communication must not only be bona fide, but the transmitter must have an interest or duty in the subject matter and the addressee must have a corresponding interest or duty. Jorgensen v. Pennsylvania Railroad Co., 25 N.J. 541, 564 (Sup. Ct. 1958); Coleman v. Newark Morning Ledger Co., supra, 29 N.J., at page 375; 1 Harper and James, op. cit. supra, sec. 5.25, pp. 435, 439; Prosser, op. cit. supra, sec. 95, p. 606; 3 Restatement, Torts, sec. 595, p. 247 (1938); 33 Am. Jur., Libel and Slander, sec. 128, p. 127; 53 C.J.S. Libel and Slander §§ 89, 107, pp. 143, 184, 185, vide, reference therein to authorities for statement that: "Where the communication is made solely for the purpose of compelling the employee to pay a debt due the informant, it is not privileged." See, also, Finkelstein v. Geismar, 91 N.J.L. 46, 48 (Sup. Ct. 1917), affirmed 92 N.J.L. 251 (E. & A. 1918).
Initially, the defendant has the burden of establishing the occasion for a privileged communication. Coleman v. Newark Morning Ledger Co., supra. But it is basically *550 a question of law for the court to decide, subject to "the exercise of the jury's traditional function where the facts are in dispute." Ibid., 29 N.J., at page 376; Swede v. Passaic Daily News, 30 N.J. 320 (1959); Savage v. Stover, 86 N.J.L. 478 (Sup. Ct. 1914), affirmed 87 N.J.L. 711 (E. & A. 1915); Rainier's Dairies v. Raritan Valley Farms, Inc., supra; Sokolay v. Edlin, 65 N.J. Super. 112, 124 (App. Div. 1961). Note, "Policy factors involved in conditional privilege," 1 Harper and James, op. cit. supra, sec. 5.25, p. 435.
To hold that an employer, with relation to his employee, has an interest or duty corresponding to that of a finance company in the collection of a small loan from the employee would, indeed, stretch the doctrine of qualified privilege to the breaking point. The illustration presented to the jury in the court's instructions was not analogous. The court said, after discussing absolute privilege:
"The other privilege is qualified or privileged  for example, if a prospective employer writes to a former employer and says John Jones is seeking a job with me, will you let me know what kind of a person he is, and then the former employer in the interest of truth, in the interest of helping the prospective employer writes and says, `John Jones is a good man but we found that we had to lay him off because he was constantly late for work and we also found from time to time that he went home before his shift was finished but yet expected and did get paid for a full day.' There that is something that might hurt the reputation of John Jones but it is done under privilege, namely, to honestly answer something that is the business of the former employer. And so it is in this case. The Seaboard Finance Company had loaned Mr. and Mrs. Neigel money. And they unfortunately had a family dispute, they had trouble, and as a result of that they separated and the payments, according to the testimony of Mrs. Neigel were supposed to be assumed by her by reason of some private agreement with her husband."
In Vail v. Pennsylvania R. Co., 103 N.J.L. 213, 216 (Sup. Ct. 1926), plaintiff, a passenger on defendant's train, was travelling from New York to Newark. The conductor claimed that the plaintiff gave him an expired ticket and *551 that plaintiff refused to pay the 31¢ fare. The assistant treasurer of the railroad company wrote a letter to the plaintiff's employer stating the conductor's version of what transpired. This communication was the basis of a libel action to which defendant pleaded a privileged communication. The court decided that the letter, by necessary inference, charged plaintiff with an unlawful act and further held that a privileged communication must not only be bona fide, but
"* * * it must also be with relation to a subject-matter in which the party communicating has an interest, or in reference to which he has a duty, and to a person having a corresponding interest or duty. King v. Patterson, supra [49 N.J.L. 417 (E. & A. 1887)]. In the present case, the plaintiff's employer had absolutely no interest in the question whether its employe owed the defendant company thirty-one cents for unpaid railroad fare. That it was under no duty with relation thereto goes without saying."
It has been held that letters from a creditor to an employer imputing that an employee refuses to pay or ignores a just debt can be found defamatory by a jury. See Stickle v. Trimmer, 50 N.J. Super. 518, 523 (App. Div. 1958), certification denied 28 N.J. 57 (1958), and the authorities therein cited. Communications between employers relative to a prospective employee, or correspondence seeking credit information, may well be privileged, albeit qualified, Fahr v. Hayes, 50 N.J.L. 275 (Sup. Ct. 1888); but are to be contra-distinguished, however, from a creditor writing to an employer as a medium for collecting a debt, cf. Vail v. Pennsylvania Railroad Company, supra; Duerrler v. Rowell, 4 N.J. Misc. 71 (Sup. Ct. 1926). No testimony in the case now under review was adduced at the trial on behalf of the finance company or its collection manager.
We hold that the letter mailed to plaintiff's employer by the defendants does not, in itself, establish a qualified privilege.

*552 II.
We come now to the defense of truth  "The truthfulness of a libel is a complete defence in a civil action, but it must be pleaded fully and as to every particular, and be strictly proved to be availed of." Merrey v. Guardian Printing & Publishing Co., 79 N.J.L. 177, 183 (Sup. Ct. 1909), affirmed 81 N.J.L. 632 (E. & A. 1911); Hartley v. Newark Morning Ledger Co., 134 N.J.L. 217, 219 (E. & A. 1946); Wilson v. Savino, 10 N.J. 11, 16 (1952).
Defendants, in their answer, pleaded truth as a separate defense and, in general, alleged that the supposed defamatory words in the letter annexed to the complaint were in their nature and original meaning true in substance and in fact. At the trial, the defense relied upon the cross-examination of the plaintiff, who admitted the debt and the fact that she was having trouble with her husband. She denied, however, a "family feud" and testified that she was not using her employment office to avoid repayment of the finance company loan.
Where a libel charge is specific, a general plea of truth will suffice. Herrmann v. Newark Morning Ledger Co., 48 N.J. Super. 420, 433 (App. Div. 1958), reaffirmed on rehearing 49 N.J. Super. 551 (App. Div. 1958). Note the case therein cited by Judge Conford, viz., Jorgensen v. Pennsylvania Railroad Co., 38 N.J. Super. 317 (App. Div. 1955), certification denied 20 N.J. 308 (1956), wherein the plea of truth was made only in the pretrial order and there was a reversal for removing the issue from the jury's consideration. Compare, Wilson v. Savino, supra.
The question of truth was for the jury and they were properly charged that truth is an absolute defense.

III.
In libel actions, there is always a preliminary question for the trial court, i.e., are the words reasonably capable of defamatory meaning. Mosler v. Whelan, 28 N.J. *553 397 (1958). "If they are vague or ambiguous or reasonably susceptible of legally innocent as well as defamatory significance, it is for the jury to say in the light of the circumstances disclosed by the evidence and the entire context of the writing whether they were understood to be defamatory by the average reader who saw them." Id., at p. 404. Supporting authorities cited are: Leers v. Green, 24 N.J., at p. 253; Morley v. Post Printing & Publishing Co., 84 Colo. 41, 268 P. 540 (Sup. Ct. 1928); Gatley, Libel and Slander (4th ed. 1953), 124; 1 Harper and James, op. cit. supra, sec. 5.29, pp. 463-465; Prosser, op. cit. supra, sec. 92, pp. 572, 581; Restatement, Torts, sec. 614, p. 304. See, also, Mick v. American Dental Association, 49 N.J. Super. 262 (App. Div. 1958), certification denied 27 N.J. 74 (1958). In a situation where the publication "is not reasonably susceptible of a non-defamatory signification" it is libelous as a matter of law and the court should so declare. Herrmann v. Newark Morning Ledger Co., supra, 48 N.J. Super., at page 430. Where not capable of defamatory meaning, there should be a judgment of dismissal. Dressler v. Mayer, 22 N.J. Super. 129 (App. Div. 1952). See, also, Leers v. Green, supra, 24 N.J., at page 256.
All libel imports implied malice, which is an essential ingredient. In a legal sense, it signifies nothing more than a wrongful act done intentionally, without just cause or excuse. King v. Patterson, 49 N.J.L. 417, 419 (E. & A. 1887). Implied malice is a technical imputation inherent in defamation, and is to be distinguished from malice in fact. Any defamatory matter is prima facie libelous, and no special damages need be proven. Hand v. Winton, 38 N.J.L. 122 (Sup. Ct. 1875); Hoffman v. Trenton Times, 17 N.J. Misc. 339, 340 (Sup. Ct. 1939); Herrmann v. Newark Morning Ledger Co., supra. As stated in Leers v. Green, supra, 24 N.J., at page 251, "Injury to reputation may be either (1) presumed from the nature of the words themselves, or (2) proved by evidence of their consequences."
*554 Express malice requires affirmative proof beyond the act of publishing, indicating ill-feeling, or such want of feeling as to impute a bad motive. It does not become an issue, when the article is libelous on its face, unless punitive damages are claimed. Weir v. McEwan, 94 N.J.L. 92 (Sup. Ct. 1919).
In Bock v. Plainfield Courier-News, 45 N.J. Super. 302, 309 (App. Div. 1957), this court construed the question of damages in a libel action, stating that generally they are divided into three separate categories. The explanatory language was:
"(1) Punitive or exemplary damages, where actual malice or recklessness is shown; (2) special damages, such as loss of business, which are recoverable only upon proof of loss of specific economic benefits; and (3) general damages which the law presumes to follow inevitably from a defamatory publication and which, therefore, are often recoverable without proof of injury. 33 Am. Jur., Libel and Slander, sec. 199-202, pp. 188-192; `Developments in the Law of Defamation,' 69 Harv. L. Rev. 875, 934 et seq. (1956); Prosser on Torts (2d ed. 1955), sec. 93, p. 587."
Mr. Justice Trenchard, speaking for the Court of Errors and Appeals in Weiss v. Weiss, 95 N.J.L. 125, 127 (1920), after commenting upon the settled principle of law that punitive damages are proper if express malice is shown, then observed the character of admissible evidence respecting a defendant's financial responsibility. He said:
"* * * the mode of proving the wealth of defendant for the purpose of increasing damages depends upon the question whether the damages to be allowed are compensatory or punitive in their nature. In the former case, the damages are enhanced by the reputation of the defendant as to his circumstances and standing, and therefore the evidence should relate to his reputed wealth and standing. In the other case the inquiry should be as to his actual pecuniary ability, and hence the amount of his property should be stated by persons having knowledge of the subject."
The competency of such evidence is supported by the preponderance of authority. Flaacke v. Stratford, 72 N.J.L. *555 487, 488 (E. & A. 1905). See, also, Zambory v. Csipo, 3 N.J. Misc. 153 (Sup. Ct. 1925), rehearing denied, 3 N.J. Misc. 322 (Sup. Ct. 1925). Cf. Hartley v. Newark Morning Ledger Co., supra, 134 N.J.L., at page 223.
Evidence having been produced at the trial from which a jury could find express malice, testimony as to Seaboard's financial worth was a pertinent question for jury consideration. It should be observed, however, that "punitive damages are not awarded as a matter of right, but rather as a matter of discretion, and where none are awarded a plaintiff has no recourse if his compensatory damages properly compensate him." Hoffman v. Trenton Times, supra, 17 N.J. Misc., at page 341.
In the matter sub judice, the trial judge concluded that the alleged libelous letter was capable of a defamatory meaning, otherwise the case would not have been submitted to the jury. The dunning letter to plaintiff's employer being subject to a libelous connotation, from which compensatory damages may flow, the requisite element of implied malice necessarily was present.
Plaintiff's argument is further extended. She maintains that the conduct of the author of the questioned writing demonstrated malice in fact. The proofs are unrefuted that Scharff, the collection manager of the finance company, called the plaintiff at her place of employment several times, notwithstanding her request that he not do so; his attitude got "nastier" toward the end; and he let it be known that he intended to call her employer and that plaintiff "knew what that meant, the consequences." It is urged that these facts, coupled with the surrounding pressure tactics of Scharff, sequented by his letter of March 4, 1959, spelled out a course of conduct by Scharff toward plaintiff that evinced ill will, wrongful mind or bad motive, and constituted actual malice; particularly in the light of plaintiff's previously satisfactory experiences with the defendant company, the voluntary explanation of her problems, and her defaults being only for three monthly payments of $17 each.
*556 The gravamen of plaintiff's argument is that the derogatory wording of Scharff's letter addressed to her employer imputed, in substance, that she (1) was dishonestly endeavoring to avoid a just debt; (2) was involved in a "family fued"; and (3) was using her governmental employment as a "weapon" against her creditors. Reliance is placed upon the utterance of this court, in Trautwein v. Harbourt, 40 N.J. Super. 247, 263 (App. Div. 1956), certification denied 22 N.J. 220 (1956):
"Express malice may be deduced by the jury from such circumstances as the use of language which exceeds the demands of the occasion, Savage v. Stover, 86 N.J.L. 478 (Sup. Ct. 1914), affirmed 87 N.J.L. 711 (E. & A. 1915), or which in terms is utterly beyond and disproportionate to the facts which the defendant had reason to believe, Finkelstein v. Geismar, supra (91 N.J.L., at p. 48), or from the circumstances under which the communication is made or from any extraneous facts which tend to prove it, Ibid. Where the motive of utterance is different from that which prima facie rendered the communication privileged and is a motive contrary to good morals, the privilege vanishes, id.; Fahr v. Hayes, supra (50 N.J.L., at p. 279)."
The language in the finance company's correspondence, it is urged, is accusatory, "exceeding the demand of the occasion," and is "utterly beyond and disproportionate to the facts"; all of which injured plaintiff's good name and credit, and subjected her to disgrace among her co-workers and superiors.
The unquestioned law is that a corporation may be required to respond in damages to a libel suit for the tortious, defamatory action of an employee acting within the scope of his employment. The classic summation of Judge Jayne, in his discussion of the subject in Gindin v. Baron, 11 N.J. Super. 215, 220 (App. Div. 1951), is worthy of quotation:
"The primordial rule relative to the legal responsibility of the master for the willful tortious acts of the servant of this nature enunciated by Lord Kenyon in McManus v. Crickett, 1 East. 106, made the master's liability depend predominantly upon the moral quality of the act. That rule was abandoned both in England and *557 in this country many years ago. The rule has been progressively enlarged until it may now be stated in accord with the prevailing authorities that the liability of the master for the willful and malicious tortious acts of the servant at present extends to every case where the act of the servant is committed with a view to the furtherance and discharge of his master's business and within the scope and limits of his employment. Holler v. P. Sanford Ross, 68 N.J.L. 324 (E. & A. 1902); Moore v. Camden and Trenton Railway Co., 74 N.J.L. 498 (E. & A. 1907); Smith v. Bosco, 126 N.J.L. 452 (E. & A. 1941)."
In accord, "Libel and Slander  Libel," 10 Fletcher, Cyclopedia of Corporations (perm. ed. 1931), Liability of Corporations for Torts, sec. 4887, p. 395; Evening Journal Association v. McDermott, 44 N.J.L. 430 (E. & A. 1882). Cf. Norelli v. Mutual Savings Fund Harmonia, 121 N.J.L. 60, 64 (E. & A. 1938). See, also, Neafie v. Hoboken Printing & Publishing Co., involving distinguishable facts, 72 N.J.L. 340 (Sup. Ct. 1905), affirmed 75 N.J.L. 564 (E. & A. 1907); and the judicial decisions assembled in Annot. Libel and Slander  Insurance Company, 55 A.L.R.2d 828 (1957). Such vicarious liability of a corporation is predicated upon the doctrine of respondeat superior. 2 Harper and James, op. cit. supra, Vicarious liability, sec. 26.6, p. 1374. Moreover, this court has held that exemplary damages may be assessed against a corporation if the wrongful act was committed by an employee so high in authority "as to be fairly considered executive in character." Winkler v. Hartford Accident & Indemnity Co., 66 N.J. Super. 22, 29 (App. Div. 1961). Where the authority of an agent is denied, and disputable facts come into play, their resolution is for the jury.
The totality of the circumstances, the credibility of the witnesses and the weight of the evidence raised questions which required jury resolution. It was within their province to determine the existence of facts sufficient to warrant a conclusion of actual malice. However, since the admissibility of evidence respecting the pecuniary ability of the defendants is restricted to a finding of express or actual *558 malice, i.e., malice in fact, the jury should be so instructed, and the trial court should differentiate between the defendants and instruct the jury to find separately as to compensatory and punitive damages. Wilson v. Savino, supra, 10 N.J., at page 18; "Developments in the Law of Defamation," 69 Harv. L. Rev. 875, 939 (1956).

IV.
The record reveals a misunderstanding as to the application of the defense of fair comment which should not be injected in a civil action where matters of public concern are not involved. For an allegedly libelous article to constitute "fair comment," it must relate to a substance of legitimate public interest. Golden North Airways v. Tanana Publishing Company, Inc., 218 F.2d 612, 627 (9 Cir. 1954); 1 Harper and James, op. cit. supra, sec. 5.8, p. 370. Extended treatment of the subject of "fair comment" was developed by our Supreme Court in Leers v. Green, supra, 24 N.J., at p. 253.
Counsel for plaintiff took exception to the entire charge to the jury with respect to punitive damages and the right of the jury to consider such a recovery in returning its verdict. In the court's charge, it was said:
"Now there has been some comment here about punitive damages. I instruct you, as a matter of law, that there is no basis in the evidence for allowing punitive damages because I have ruled, as a matter of law, there there is no proof or evidence of malice. I have ruled there is no actual evidence of malice nor is there any evidence from which malice may be implied in this case. So I think that if you get to the point where you consider the damages at all, certainly you need not consider punitive damages, because I don't think there is any basis in law for punitive damages in this cause of action." (Italics supplied)
This conflicts with the legal concept that implied malice is a presumption derived from the simple fact of a defamatory communication. Moreover, the factual issues of actual malice were withdrawn from the jury.
*559 A review of the entire record calls for a reversal, in toto, of the judgment below and a remand for retrial on the issues of liability and damages.